UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) <br> ) <br> v. ) <br> ) <br> KENISHA T. RIVERS, ) <br> ) <br> Defendant. ) | ) <br> ) <br> ) <br> ) <br> ) CR425-064 <br> ) <br> ) <br> ) |

## ORDER

"The touchstone of the Fourth Amendment is reasonableness, as measured in objective terms." *Barnes v. Felix*, 605 U.S. 73, 79 (2025) (internal quotation marks and citations omitted). In this case, the Court is called to determine whether Fort Stewart military police unreasonably prolonged a traffic stop that resulted in the instant charges. Defendant Kenisha T. Rivers argues that they did and, therefore, evidence resulting from that stop must be suppressed.[1] *See generally* doc. 20. The

---

[1] Rivers' Motion is titled "Motion to Suppress/Dismiss." *See* doc. 20 at 1. It expressly requests that "the case against her be dismissed." *Id.* However, the substance of the Motion, as discussed below, is limited to arguments that the traffic stop, in various respects, violated the Fourth Amendment. *See generally id.* The Government did not directly respond to the request to dismiss the charges. *See generally* doc. 27. It is absolutely clear that violations of the Fourth Amendment may result in the exclusion of evidence. *See, e.g., United States v. Calandra*, 414 U.S. 338, 347-48 (1974) (explaining the history, purpose, and function of the "exclusionary rule"). However,

Government responded in opposition. Doc. 27. The Court held an evidentiary hearing on Defendant's Motion on December 18, 2025, which was continued on January 8, 2026. *See* docs. 37 & 41. For the reasons explained below, Defendant's Motion to Suppress is **DENIED**. Doc. 20.

Defendant Rivers is charged with one count of DUI-less-safe, one count of obstructing or hindering law enforcement officers, one count of speeding, and one count of possessing an open alcoholic beverage in the passenger area of a motor vehicle, in violation of Georgia law within the territorial jurisdiction of the United States. *See* doc. 1 (Information). The events that led to the instant charges began with a traffic stop at 1:25 a.m. on March 16, 2025. *See* doc. 20 at 1. Fort Stewart Military Police officers Specialist Rinke and Sergeant Ashley observed a vehicle traveling fifty-four miles per hour in a forty-mile-per-hour zone. *Id.* at 2. They initiated a traffic stop of the vehicle, the driver of which was

---

even assuming that the factual foundation of the charges were undermined by the exclusion of critical evidence, the Federal Rules of Criminal Procedure do not permit defendants to seek pretrial dismissal of a validly pleaded charge based on an insufficiency of the evidence. *United States v. Critzer*, 951 F.2d 306, 307 (11th Cir. 1992) ("There is no summary judgment procedure in a criminal case. Nor do the rules provide for a pre-trial determination of sufficiency of the evidence."). The Motion itself points to no authority that, even assuming its arguments prevailed, dismissal, rather than or in addition to suppression of the evidence, would be an appropriate remedy. *See generally* doc. 20. To the extent that Defendant's Motion seeks dismissal, such a request is meritless and, therefore, **DENIED**. Doc. 20, in part.

subsequently determined to be Defendant Rivers. *See id.* It is undisputed that Rivers pulled her vehicle safely to the side of the road. It is also undisputed that another vehicle, driven by an unidentified friend of Rivers, stopped behind the officers' vehicle. Finally, it is undisputed that, after all the vehicles stopped, the officers exited their vehicle, Specialist Rinke approached Rivers' vehicle, Sergeant Ashley approached the following vehicle and instructed the driver to pull the car some distance in front of Rivers', and the unidentified driver complied with that instruction.

Rivers' Motion argues two issues. First, it argues that the traffic stop was prolonged, resulting in a violation of the Fourth Amendment, when the officers "suspend[ed] tasks necessary to complete the traffic stop to instead investigate possible charges of driving under the influence without reasonable suspicion." Doc. 20 at 5. Second, it argues that Rivers' Fourth Amendment rights were violated when she was seized without probable cause. *Id.* The second argument is derivative of the first. It argues that Rivers' physical seizure, when officers forcibly removed her from her vehicle, discussed in more detail below, was unreasonable because officers only "had probable cause to believe that

Ms. Rivers committed the offense of speeding." *Id.* at 9-10.  However, that argument assumes that, at the time she refused instructions related to field sobriety testing, "[s]he was under no obligation to" do so.  *Id.* at 10.  As explained below, Specialist Rinke's initial contact with Rivers provided reasonable suspicion that she was intoxicated.  Thus, the request that she submit to field sobriety tests did not unconstitutionally prolong the traffic stop.  Her refusal to submit to field sobriety tests, therefore, provided probable cause for her seizure and arrest.

    Because the facts relevant to Rivers' suppression motion are disputed, the Court begins its analysis with the applicable fact-finding procedures.  In deciding a motion to suppress, the district court acts as the factfinder and must evaluate the credibility of any witnesses.  *See, e.g., United States v. Schmitz*, 153 F.4th 1334, 1339 (11th Cir. 2025).  In considering a witness's credibility, the court, as factfinder, must "weigh[ ] the testimonies of all the witnesses, taking into account the interests of the witnesses, the consistencies or inconsistencies in their testimonies, and their demeanor on the stand."  *United States v. Ramirez-Chilel*, 289 F.3d 744, 750 (11th Cir. 2002).

As noted above, two Fort Stewart military police officers, Specialist Rinke and Sergeant Ashley, testified. Doc. 41-1. Both officers testified confidently and consistently as to the events leading up the initial traffic stop. Specialist Rinke testified that when he made initial contact with Rivers to collect her driver's license and documents to cite her for speeding, he noted an "overbearing smell of perfume," that her speech was slurred or "slightly slurred," and that her eyes were "glossy" or "bloodshot [and] watery."[2] Rinke also testified that, based on his training and experience, the unusually strong perfume odor indicated that it was potentially "masking" the odor of some intoxicant. He also testified that the combination of the indicia led him to suspect that Rivers was under the influence of an intoxicant, specifically alcohol. He also testified that, based exclusively on those observations, he would have requested Rivers submit to a field sobriety test. The Court finds Specialist Rinke's

---

[2] Defendant admitted written reports prepared by Specialist Rinke, Sergeant Ashley and several other officers. *See* doc. 37-2. Although Defendant identified a number of inconsistencies between the various officers' reports and testimony, some of which are discussed below, Rinke's testimony concerning the indicia of intoxication that he observed during his initial contact with Rivers is entirely consistent with his written report. *See id.* at 6.

5

consistent and unequivocal testimony about his observations of Rivers when he initially approached her vehicle entirely credible.

As noted above, Sergeant Ashely was talking to the driver of the following vehicle while Rinke was talking to Rivers. Both returned to their police vehicle approximately simultaneously and Rinke initiated the procedure to verify Rivers' identity and her vehicle's registration. The witnesses' testimony was inconsistent about whether, while those checks were in process, Rinke reported his observations of Rivers to Ashley, and whether Ashley confirmed them. Their testimony was also inconsistent about the chronology of the stop after Rinke initiated the process to check Rivers' license and registration. Sergeant Ashley testified that Rinke reported that he smelled alcohol, Rinke expressly disclaimed smelling any. Their testimony was also inconsistent, and vague, about whether the verification process was concluded before, simultaneously, or after the other officers arrived. Given those ambiguities, and a general demeanor of uncertainty, the Court declines to credit Ashley's testimony, to the extent that it is inconsistent with

Rinke's credible testimony.[3]  However, as discussed below, the Court concludes that Rinke's initial observation of the indicia of intoxication provided sufficient reasonable suspicion to prolong the stop to request Rivers submit to field sobriety testing.  The basis of the stop, therefore, changed from the simple traffic infraction into an investigation of Rivers' potential intoxication.

Traffic stops are, generally, a species of the "brief investigatory detention" contemplated by *Terry v. Ohio*, 392 U.S. 1 (1968).  *See, e.g., Berkemer v. McCarty*, 468 U.S. 420, 439 (1984).  The Supreme Court has explained that such a seizure justifies investigation of the traffic violation.  *See Rodriguez v. United States*, 575 U.S. 348, 354 (2015).  "Like a *Terry* stop, the tolerable duration of police inquiries in the traffic-stop

---

[3] To be clear, the Court did not observe, and does not find, any indication that Sergeant Ashley misrepresented any fact in his testimony. However, the Court found his testimony more tentative and vague than Specialist Rinke's.  It, therefore, relies upon Rinke's version of events. Although the Court credits Rinke's testimony that he reported his observations of the indicia of Rivers' intoxication to Ashley, and that Ashley confirmed those observations, because Ashley did not remember those events, the Court has limited its reasonable-suspicion analysis below to Rinke's testimony of his observations of Rivers during his initial contact. As discussed below, the Court finds those observations provided reasonable suspicion of her intoxication to justify requesting her to submit to standard field sobriety tests. Given that finding, and the fact that there is no evidence that the quantum of suspicion of her intoxication decreased after that request, any discrepancy in the precise facts during the period between Rinke's observations and Ashley's request that she consent to the tests is moot.

context is determined by the seizure's 'mission'—to address the traffic violation that warranted the stop, [cit.], and attend to related safety concerns, [cit.]." *Id.* (citations omitted). The limitations on such stops are not so strict that they preclude *any* unrelated inquiry, but such inquiries may not be conducted "in a way that prolongs the stop, absent the reasonable suspicion ordinarily demanded to justify detaining an individual." *Id.* at 355.

To the extent that *Rodriguez* left room for doubt about the constitutional effect of prolonging a traffic stop to permit unrelated investigations, the Eleventh Circuit has eliminated it. In *United States v. Campbell*, the court reviewed a district court's determination that the prolongation of a traffic stop by approximately twenty-five seconds did not violate constitutional requirements. *See* 26 F.4th 860, 869 (11th Cir. 2022) (en banc). The Court noted that circuit precedent required courts to evaluate the "overall reasonableness" of the stop to determine whether a prolongation of an otherwise reasonable stop transgressed constitutional limits. *Id.* at 883 (citing *United States v. Griffin*, 696 F.3d 1354 (11th Cir. 2012)). *Rodriguez* abrogated that standard. *Id.* at 884. The "overall reasonableness" test, therefore, was replaced by a three-part

8

analysis: "to unlawfully prolong [a traffic stop], the officer must (1) conduct an unrelated inquiry aimed at investigating other crimes (2) that adds time to the stop (3) without reasonable suspicion." *Id.*

Reasonable suspicion is a lower standard that probable cause, *Illinois v. Wardlow*, 528 U.S. 119, 123 (2000); "requir[ing] that the totality of the circumstances create, at least, some minimal level of objective justification for the belief that the person engaged in unlawful conduct." *United States v. Blackman*, 66 F.3d 1572, 1576 (11th Cir. 1995). "The officer, of course, must be able to articulate something more than an inchoate and unparticularized suspicion or 'hunch.'" *United States v. Sokolow*, 490 U.S. 1, 7 (1989) (quotes and cite omitted). However, conduct that is, in itself, completely innocent may provide the basis for an officer's reasonable suspicion. *See id.* at 9-10 ("We noted in [*Illinois v.*] *Gates*, 462 U.S. [213] . . . 243-244, n. 13, . . . [1983], that 'innocent behavior will frequently provide the basis for a showing of probable cause,' and that 'in making a determination of probable cause the relevant inquiry is not whether particular conduct is 'innocent' or 'guilty,' but the degree of suspicion that attaches to particular types of

9

noncriminal acts.' That principle applies equally well to the reasonable suspicion inquiry." (alterations omitted)).

Rivers' Motion argues that the officers improperly prolonged the traffic stop when they did not diligently pursue the process of issuing the speeding citation and, instead, began to investigate whether Rivers was intoxicated. *See* doc. 20 at 8. While the Government's argument that officers had requisite reasonable suspicion of Rivers' intoxication relies on facts that were not borne out at the hearing, *see* doc. 27 at 7, as noted above, the Court concludes that Rinke had reasonable suspicion based on his observations of Rivers when he initially made contact. Rinke's wholly credible testimony of (1) an "overbearing" odor of perfume, which he judged to be a "masking smell," (2) Rivers' slurred speech, and (3) her "glossy" eyes provided reasonable suspicion of her intoxication.

At the hearing, defense counsel emphasized the fact that the reported indicia of Rivers' intoxication do not precisely track the indicia or "cues," identified by the National Highway Traffic Safety Administration (NHTSA). However, while the NHTSA "cues" may be helpful in evaluating reasonable suspicion of intoxication, they are not controlling. *See, e.g., Linin v. Neff*, 2017 WL 3841848, at *3 (D. Utah

Sept. 1, 2017) ("proposed testimony that [officer] claims to have observed only one of the 21 [NHTSA] cues is likely to confuse the jury because it suggests that more than one cue is required to establish reasonable suspicion—and that is not the case."). Moreover, courts have recognized that "glossy" or bloodshot eyes and slurred speech support reasonable suspicion of intoxication. *See, e.g., United States v. Moua*, 145 F.4th 929, 934 (8th Cir. 2025) (recognizing that "slurred speech, bloodshot eyes, and persistently dilated pupils," were "additional signs of impairment" relevant to reasonable suspicion); *Rogala v. District of Columbia*, 161 F.3d 44, 52 (D.C. Cir. 1998) (summarily affirming finding that "glossy" eyes, "bloated" face, and running a red light were "sufficient to justify a field sobriety test under the reasonable suspicion standard."). Courts have also recognized that excessive perfume or cologne use, though innocent, also contributes to reasonable suspicion. *See United States v. Ludwig*, 641 F.3d 1243, 1248 (10th Cir. 2011) (Gorsuch, J.) ("[T]hough the use of cologne or perfume is certainly consistent with lawful activity, our cases have acknowledged that it is commonly used to mask the odor of drugs and so can contribute to a reasonable suspicion calculus." (internal quotation marks and citations omitted)). Given that the Court

11

finds Rinke's testimony that he observed Rivers' glossy bloodshot eyes, slurred speech, and the presence of what he judged to be a "masking scent," credible, the Court concludes he had reasonable suspicion to believe she might be intoxicated. Thus, the request that Rivers submit to field sobriety tests did not unlawfully prolong the stop. *See, e.g., Wilson v. Cockrell*, 2023 WL 8195199, at *6 (S.D. Tex. Nov. 27, 2023) ("An officer with reasonable suspicion of intoxication may order standard field sobriety tests to confirm or dispel that suspicion." (citations omitted)).

Given that the Court finds that there was no unlawful prolongation of the traffic stop to request that Rivers submit to a standard field sobriety test, her other challenge necessarily fails. Both Rinke and Ashley consistently testified that, after she consented to a field sobriety test, the indicia of Rivers' intoxication increased, she refused to comply with commands, and, ultimately, attempted to flee. The culmination of that sequence of events provided officers with sufficient probable cause for Sergeant Ashley to reach into her car and the officers' forceful removal of her from it.

As noted above, Rivers' Motion, separate and apart from her argument that the stop was improperly prolonged, argues that her

seizure was unlawful. *See* doc. 20 at 9-11. That argument implicates additional events beyond Specialist Rinke's observations of the indicia that she was intoxicated. The events relevant to her seizure begin when Sergeant Ashley undisputedly requested that she submit to standard field sobriety tests and she consented. *See, e.g.,* doc. 20 at 4-5. Ashley requested she step out of the vehicle to conduct the test. *See, e.g., id.* At the hearings Rinke and Ashley testified, consistently, that Rivers behaved strangely after Ashley's request; raising and lowering the driver's side window, turning the engine on and off, and, for no apparent reason, showing officers her perfume bottle and stating: "This is my perfume." Finally, both officers testified that, after Rivers refused multiple commands to get out of the car, she pushed the accelerator pedal to the floor. The car did not move because the transmission remained in park. Whether Sergeant Ashley reached into the window to open the door shortly before Rivers pressed the accelerator or immediately after is not entirely clear from the witnesses' testimony. After the door was opened, however, Rivers was forcibly removed from the car, subdued after a brief scuffle, secured in a police car, and placed under arrest.

As discussed above, the Court finds that Specialist Rinke's initial contact with Rivers provided reasonable suspicion to immediately convert the stop for speeding into an investigation of Rivers' apparent intoxication. As Rivers rightly points out, her subsequent seizure and arrest, without a warrant, required probable cause. *See* doc. 20 at 5. "Probable cause," however, "is not a high bar[,]" and requires "[t]he mere probability or substantial chance of criminal activity." *United States v. Delgado*, 981 F.3d 889, 897 (11th Cir. 2020) (internal quotation marks and citations omitted). As the Government's brief succinctly states, "Defendant's behavior and actions created more evidence that probable cause existed to arrest Defendant as the DUI investigation continued." Doc. 27 at 8.

The Eleventh Circuit has recognized that, when a driver refuses to submit to tests to determine their intoxication, officers have probable cause for a warrantless arrest. *See Miller v. Harget*, 458 F.3d 1251, 1259-60 (11th Cir. 2006) (after an investigatory detention based on reasonable suspicion of intoxication, "probable cause developed, justifying [a driver's] arrest, because [the driver] refused to take a breathalyzer test."). *Miller* explained that it was reasonable for the officers "to view this

choice[, not to submit to the "minor inconvenience" of alcohol testing,] as evidence of guilt," and concluded that "[a] driver cannot escape arrest simply by refusing to cooperate." *Id*. at 1260. Although Rivers' behavior might reasonably be characterized as "avoidance," rather than refusal immediately after she consented to submit to the field sobriety tests, *Miller* supports the conclusion that the officers reasonably interpreted her behavior "as evidence of guilt," and here, as there, "[a]ny other conclusion would tie the hands of law enforcement in their efforts to keep intoxicated drivers off the streets." *Id*.

In summary, the Court concludes that, based on Specialist Rinke's credible testimony, officers had reasonable suspicion to believe that Rivers was intoxicated when he made initial contact. At that moment, the basis for the stop converted from a simple speeding investigation into a DUI investigation. As such, the request that Rivers submit to field sobriety tests did not unlawfully prolong the stop. Moreover, Rivers behavior after she consented to submit to those tests, which quickly became tantamount to refusal to submit to them, gave officers probable

cause to believe she was intoxicated and arrest her. Accordingly, her Motion to Suppress is **DENIED**. Doc. 20, in part.

**SO ORDERED,** this 16th day of January, 2026.

*/s/ Christopher L. Ray*
CHRISTOPHER L. RAY
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA